Jesse C. Trentadue  (#4961)
170 South Main Street, Suite 725
Salt Lake City, Utah 84101
Telephone: (801) 532-7300
Facsimile: (801) 532-7355
jesse32@sautah.com
*Pro Se Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JESSE C. TRENTADUE,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendant. | **PLAINTIFF'S OPPOSITION TO FBI'S MOTION TO STAY**[1]<br><br>Case No.: 2:24-cv-00105-AMA-DAO<br>Judge Ann Marie McIff Allen<br>Magistrate Judge Daphne A. Oberg<br><br>**Oral Argument Not Requested** |

---

[1] ECF 18.

Pursuant to the *Freedom of Information Act* ("*FOIA*"),[2] Plaintiff seeks to obtain 69,375 pages and 3 CDs of media (collectively "*records*") related to the FBI's involvement in the Oklahoma City Bombing as a result of the agents/informants it had embedded with the perpetrators of that terrorist attack. Almost a decade after he filed his *FOIA* requests, Plaintiff commenced this lawsuit to obtain these *records.* The FBI is asking the Court to stay these proceedings and to allow it to process the *records* at a rate of just 500-pages per month for release to Plaintiff over a period of 11.5 years. Plaintiff hereby opposes that *Motion*. **Oral argument not requested**.

## FOIA PROCEDURE

When it receives *FOIA* request, "an agency usually has 20 working days to make a 'determination'" as to the request.[3] "[I]n order to make [this] 'determination'. . . the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse."[4] "An agency can extend that 20-working-day timeline to 30 working days if unusual circumstances delay the agency's ability to search for, collect, examine, and consult about the responsive documents."[5]

---

[2]  5 *U.S.C.* §§ 552 *et. seq.*

[3]  *Citizens for Resp. and Ethics in Washington v. Fed. Election Commn.*, 711 F.3d 180, 189 (D.C. Cir. 2013)(citing 5 U.S.C. § 552(a)(6)(A)(i)).

[4]  *Id.* at188.

[5]  *Id.* (citing 5 U.S.C. § 552(a)(6)(B)).

Once a determination is made, "FOIA requires that the agency make the records 'promptly available.'"[6] The agency, however, has "some additional time to physically redact, duplicate, or assemble for production the documents that it has already gathered and decided to produce."[7] Exactly how much time is context dependent, but it would "typically" be "within days or a few weeks of a 'determination,' not months or years."[8]  If the agency fails to make the determination within the statutory timeframe (within 20 working days, or 30 working days in unusual circumstances), the requestor may sue to enforce compliance with the statute,[9] which is what Plaintiff has done.  The Court then has the authority to oversee and supervise the agency's progress in responding to the request.[10]

"[I]f exceptional circumstances exist and an agency 'is exercising due diligence in responding to the request', a court may grant the agency 'additional time to complete its review of the records.'"[11]  "Congress has long recognized that 'information is often useful only if it is

---

[6] *Id.*

[7] *Id.* at 189.

[8] *Id.*

[9]  *See* 5 U.S.C. § 552(a) (6)(C); 711 F.3d at 188–89; *Daily Caller v. U.S. Dept. of State*, 152 F.Supp.3d 1, 10 (D.D.C. 2015) (failure to meet statutory deadline to make a determination "serves primarily as a means to obtain immediate judicial supervision over an agency's response to an outstanding FOIA request.").

[10]  *Citizens*, 711 F.3d at 189; *Clemente v. Fed. Bureau of Investigation*. 71 F.Supp.3d 262, 269 (D.D.C. 2014) (a court "may use its equitable powers to require the agency to process documents according to a court-imposed timeline."); *Elec. Priv. Info. Ctr, v. Dept. of Justice*, 416 F.Supp.2d 30, 37–38 (D.D.C. 2006) ("FOIA, as amended, envisions the courts playing an important role in guaranteeing that agencies comply with its terms.").

[11]  *Citizens*, 711 F.3d at 188 (quoting 5 U.S.C. § 552(a)(6)(C)(i)).

timely,' and that, therefore, 'excessive delay by the agency in its response is often tantamount to denial.'"[12]  Furthermore, "[u]nreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses."[13]

This is a case in which the FBI located the *records* requested by Plaintiff almost a decade ago. But never made the statutorily required  20 working day "determination" as to those requests.  Neither did the FBI ask to extend the 20-working-day timeline to 30 working days because of unusual circumstances that delayed the Bureau's ability to search for, collect, examine, and consult about the responsive documents.

The FBI never began to process Plaintiff's *FOIA* requests despite having demanded partial payment from Plaintiff of the costs of producing the *records*, which Plaintiff paid in 2016, and despite representing to Plaintiff that his requests would be "assigned" to an analyst for processing.  Instead, the FBI is now before the Court asking for a stay of these proceedings and to be allowed to produce the *records* over a period of more than 11-years.  But in order to obtain a stay, the FBI must show: (1) that exceptional circumstances exist meriting a stay; and (2) that it has exercised "due diligence" in processing Plaintiff's requests,[14] which it  has clearly not done.

## PROCEDURAL HISTORY

During the late 1980's and early 1990's, the FBI implemented an undercover sting operation call "*Punchout*" that was designed to identify and apprehend surplus dealers who

---

[12]  *Id.* at 164 (citing H.R. Rep. No. 93-876, at 6271 (1971)).

[13]  *Long*, 693 F.2d at 910

[14]  *See* 5 U.S.C. § 552(a)(6)(C)(i)).

bought and sold property stolen from Department of Defense facilities in Utah.  Roger Edwin

Moore ("Moore") was an FBI undercover operative in that sting  operation.[15]

For months preceding the bombing of the Murrah Federal Building in Oklahoma City on

April 19, 1995, Moore was traveling with Timothy McVeigh who was one of the perpetrators of

that terrorist attack.[16] According to Terry Nichols, one of McVeigh's accomplices, Moore

provided with the Kinestik explosives used to detonate the bomb that destroyed the Murrah

Federal Building,[17] and Moore told McVeigh that he knew McVeigh "**would put them [the**

**Kinesteik] to good use**."[18]

On September 26, 2015, Plaintiff served a *FOIA Request* upon the FBI for records

concerning Moore's involvement in *Punchout* ("*Punchout FOIA*").[19]  On October 21, 2016, the

FBI notified Plaintiff that it had located 30,129 pages of documents and 1 DVD that were

potentially responsive to his *FOIA Request*, and asked that Plaintiff agree to pay for the cost of

producing these materials on CDs.[20] Plaintiff agreed to pay the almost $1,000.00 in production

costs.[21]  In the intervening years since the filing of his *Punchout  FOIA*, Plaintiff repeatedly

---

[15]  *See Complaint*, ECF 1 at ¶7.

[16]  *Id.* Exhibit A, ¶¶ 11-24, ECF 1-2; Exhibit B, ECF 1-3

[17]  *See id.*

[18]  *Id*. ¶ 13.(emphasis added).

[19]  *Id.  Exhibit* E, ECF 1-5.(emphasis in original). *Seidel Dec*. ECF 18-1¶ 5.

[20]  *Complaint, Exhibit* F, ECF 1-6, *Seidel Dec*. ECF 18-1¶ 7.

[21]  *Seidel Dec*. ECF 18-1¶¶ 7 and 9.

5

contacted the FBI asking when he would receive these records but never received a response to those inquiries.

During 1993, 1994 and 1995, a gang known as the Aryan Republican Army or "ARA" robbed banks and armored cars in the mid-west.  Timothy McVeigh participated in some of those robberies and is reported to have used money obtained from these crimes to help fund the bombing of the Murrah Federal Building in Oklahoma City on April 19, 1995.  According to Peter Langan, the leader of the ARA,  several members of the ARA assisted McVeigh in carrying out the bombing of the Murrah Federal Building.[22]

On July 29, 2016, Plaintiff served a *FOIA Request* upon the FBI for records on Timothy James McVeigh and ARA member Richard Lee Guthrie, Jr. From the BOMBROB Case File and/or FBI Major Case 124 for the years 1993, 1994, and 1995 that mentioned Timothy James McVeigh and/or reported upon or memorialized his contacts with Guthrie, the Aryan Republican Army, ARA, Mid-West Bank Bandits of Mid-west Bank Robbers ("*BOMBROB FOIA*").[23]

On August 31, 2016, the FBI notified Plaintiff that it had located 36,795 pages of responsive documents, and that the cost of producing them would be $1,135.00.[24] In that same letter, the FBI asked Plaintiff to agree to pay the production cost.[25] Plaintiff agreed.[26] Thereafter,

---

[22] *Id.*  Exhibit L, ECF 1-12.

[23] *Id.* Exhibit M, ECF 1-13.(emphasis in original).

[24] *Id.* Exhibit O, ECF 1-15.

[25] *Id.*

[26] *Id.*

Plaintiff was contacted by the FBI and asked to pay in advance ½ of the $1,135.00.  Plaintiff sent

the FBI a check for $567.50, which was ½ of the estimated production costs.

On May 10, 2017, the FBI emailed Plaintiff to inform him that the cost check had

been received, and his request would be assigned to a **"disclosure analyst for processing**."[27]

On February 7, 2024, Plaintiff visited the FBI website to check on the status of his *FOIA*

*Requests* and discovered that they still had not been assigned to an analyst for processing. It has

now more than 8-years since Plaintiff submitted his *FOIA Requests* to the FBI for records and he

has not received a single document.

After this lawsuit was filed, the FBI acknowledged to Plaintiff that it "**had located**

**approximately 69,375 pages and 3 CDs of media responsive to Plaintiff's requests**."[28]  But,

despite repeated demands from Plaintiff for the release of these materials, the FBI has refused

and still refuses to do so.  The FBI proposes to process these *records* at the rate of only 500-

pages per month for release to Plaintiff over a period of 11.5 years, which means that Plaintiff

will be almost 90-years old when he finally receives all of the *records*.

## REBUTTAL TO FBI'S STATEMENT OF FACTS

It can be fairly said that the only difference between the FBI and Russian KGB is that the

KGB never claimed to be a legitimate law enforcement agency.  It can also be fairly said that in

cases such as this involving an overarching specter of governmental malfeasance, the FBI has

been and will be anything but honest and candid with the Court.  These statements are not,

---

[27] *Id.* Exhibit S, ECF 1-19(emphasis added).

[28] *Seidel Dec.*, 18-1 ¶ 40.(emphasis added).

however, hyperbole.  The are based upon decades of *FOIA* litigation between Plaintiff and the

Bureau, including a pending case in the District of Utah to obtain a copy of the videotape

possessed by the FBI showing the perpetrators of the Oklahoma City Bombing delivering the

truck-bomb to the Murrah Federal Building on the morning of April 19, 1995,[29] which the FBI

claims it has misplaced and cannot find.   Based upon this experience, Plaintiff can truthfully say

that the FBI never tells the truth when the records at issue implicate it in serious wrongdoing.

    In support of its *Motion to Stay* and to dribble the documents to Plaintiff over a period of

11-plus years, the Bureau has submitted a lengthy *Declaration* from its *FOIA* czar, Michael G.

Seidel, who is the current Section Chief of the FBI's Record/Information Dissemination Section.

Based upon a well-documented history of dishonesty and deception when it comes to being outed

for its role in the Oklahoma City Bombing,  should not come as a surprise to the Court  that

Seidel's *Declaration* is crammed full of deceptive and misleading facts.[30]

    Seidel, for example, represents to the Court that on September 6, *2016,* Plaintiff  "agreed

to the FBI processing his request under its *Interim Release Policy* at the rate of 500 pages per

month as processing is completed."[31]   That is not true. The *Interim Release Policy* is designed to

---

[29]  *See Trentadue v. FBI*, District of Utah Case No.  2:08cv788 CW. That was apparently
the first *FOIA* case to ever go to trial.  The trial concluded in July of 2014, but the Court has
delayed issuing its ruling pending a sealed investigation into witness tampering by the Bureau.
*See* 2:15-mc-00324-DBP.  *See also Order Appointing Special Master* to investigate FBI's
witness tampering, Exhibit 1 hereto.

[30]  ECF 18-1. The FBI has had a practice of a lack of candor with the court in high-profile
*FOIA* cases, including perjury by Seidels' predecessor, David M. Hardy.  *See Perjury Order*,
Exhibit 2 hereto.

[31]  *Seidel Dec*. ECF 18-1¶ 13.

ensure the fair and effective administration of the FBI's *FOIA* obligations. Pursuant to this *Policy*, when a *FOIA Request* involves a large number of documents the responsive documents are processed and released to the requester in 500-page increments until completion. This rolling release allows the FBI to provide requesters with information (*i.e.*, document/records) in 500-page batches as they are processed for release instead of waiting until all of the responsive documents are processed before the Bureau to provides them to the requester.[32] Plaintiff agreed to receiving the documents in 500-page increments on a CD as they were processed whereby he would not have to wait until all of the records were processed before receiving them.[33] Plaintiff NEVER agreed to the FBI processing the documents at the rate of only 500-pages per month.

More egregious still, is Seidel's representation to the Court that "**responsive records to his [Plaintiff's] request concerning BOMBROB and Roger Edwin Moore were available in the FBI's Library on the FBI's public website.**"[34] That statement is so misleading as to merit sanctions. The BOMBROB records posted by the FBI, for example, consist of just 5,514 pages, not the 36,795 pages of responsive documents that the Bureau claims to possess. More importantly, of these 5,514 pages of only 51 pages reference McVeigh. Similarly, the FBI's website contains just 229 pages of records on Roger Edwin Moore, not the 31,129 pages of responsive records that the Bureau claims to have located, and none of these records involve

---

[32] *See*:  https://www.justice.gov/oip/oip-guidance/Adjudicating%20Administrative%20Appeals%20Under%20the%20FOIA

[33] *See* ECF 18-1 page 58.

[34] *Seidel Dec.*, 18-1 ¶ 2 (emphasis added).

Moore's participation in *Operation Punchout*.[35]

Seidel devotes the majority of his *Declaration* to claiming that the FBI's *FOIA* workload constitutes the exceptional circumstances necessary for a stay and the 11-plus year production schedule, including claiming that processing Plaintiff's requests would be unfair to other *FOIA* requesters.[36]  Courts have rejected these arguments.[37]

Seidel also ignores  two factors that the Court must consider in determining whether to implement a stay: (1) the public's interest in the materials due to the specter of government wrongdoing, and (2) what, if anything the Bureau did to provide documents to a requester before the filing of a lawsuit.[38]  With the 30th anniversary of the Oklahoma City Bombing fast

---

[35] *Trentadue Dec*.¶¶ 3-14 that is  filed herewith.  Seidel's attempt to mislead the Court gives rise to the obvious inference that the *Punchout* and *BOBMROB records* implicate the Bureau in the Oklahoma City Bombing.

[36] *Seidel Dec.* 18-1 ¶¶ 31 through 41.  Seidel claims processing Plaintiff's requests at the rate of 5,615 pages a month would disrupt responses to "**eleven (11) other requesters**." *Id.* fn. 7.(emphasis added).  Plaintiff submits that this argument along with Seidel's claim that the"FBI takes very seriously its [FOAI] responsibilities . . ." (*id.* p. 22) would make a cat laugh, and cat's are not known for having a sense of humor.

[37] *See, e.g., Elec. Priv. Info.Ctr. v. FBI,* 933 F.Supp. 2d 42(D.D.C. 2013) (FBI's reliance on the number and complexity of FOIA requests, other *FOIA* litigation, and its backlog did not support "exceptional circumstances" warranting a stay of FOIA proceedings).

[38] *See, e.g.*, *American Civil Liberties Union Foundation of Southern California v. United States Immigration and Customs Enforcement*, 2023 WL 8539484, at *1 (C.D.Cal., 2023)(ordering request for information about ICE's treatment of hospitalized detainees to be processed at rate of 3,000 pages per month); *Seavey v. Dep't of Justice*, 266 F.Supp.3d 241, 247–48 (D.D.C. 2017) (ordering FBI to process 2,850 pages per month for documentary film makers request for FBI records related to anti-war movement); *Open Society Justice Initiative v. Central Intelligence Agency*, 399 F. Supp. 3d 161, 162 (S.D.N.Y. 2019)(ordering Department of Defense to process 5,000 pages per month); *Clemente v. Federal Bureau of Investigation*, 71 F. Supp. 3d 262, 264-65 (D.D.C. 2014)(ordering FBI to process 5,000 pages per month where requests involved serious allegations of widespread corruption in law enforcement, plaintiff

approaching, these *records* are of considerable public interest.[39]   It also  should not go unnoticed

by the Court that for almost a decade the FBI has failed to make any attempt to meet its *FOIA*

obligations in this case even though it clearly involves "[a] matter of widespread and exceptional

media [and public] interest in which there exist  possible questions about the government's

integrity [*e.g.* the FBI's role in the Oklahoma City Bombing] which affect public confidence."[40]

## CONCLUSION

The Court should deny the FBI's *Motion to Stay* and, commencing with the *BOMBROB*

request because of the upcoming anniversary of the Oklahoma City Bombing and when completed

followed by the *Punchout* request, the Court should also order the FBI to process the *records* at the

rate of  5,500 pages per month with interim month-end releases of the documents processed during

each month, which will result in Plaintiff receiving all of the *records* in about 13-months instead of

11-plus years.

Dated this 23rd day of July, 2024.

 /s/ jesse c. trentadue
Jesse C. Trentadue
*Pro se*

---

"face[d] a very limited lifespan" and had waited two years before the FBI produced any
responsive material); *Los Angeles Times Communications LLC v. U.S. Department of Homeland
Security*, 2022 WL 18932816, at *3 (C.D.Cal., 2022)(denying reconsideration of 3,000 page per
month processing rate because, among other reasons,  defendants did not respond to *FOIA*
request until after commencement of a lawsuit);  *Natural Resource Defense Council v.
Department of Energy*, 191 F. Supp. 2d 41, 42 (D.D.C. 2002)(same).

[39]  This case is being extensively followed in both the media and on social medial. *See,
e.g.,* Exhibits 3 and 4 hereto.

[40]   *See* 26 C.F.R 5.5(e)(1).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 23, 2024, I electronically filed the foregoing **PLAINTIFF'S OPPOSITION TO FBI'S MOTION TO STAY** with the Clerk of the Court using the CM/ECF system, which sent electronic notification to the following parties:

Trina A. Higgins, United States Attorney
Melina Shiraldi, Assistant United States Attorney
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 524-5682
melina.shiraldi@usdoj.gov
*Attorneys for Defendant*

/s/ jesse c. trentadue